**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By nventura at 10:16 am, Jun 19, 2009

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

Brunswick Division

| | | |
|---|---|---|
| IN RE: | ) | |
| RON GLISSON | ) | CHAPTER 13 CASE |
| SARA GLISSON | ) | NUMBER <u>08-21449</u> |
| | ) | |
| Debtors | ) | |
| | ) | |
| ATLANTIC NATIONAL BANK | ) | |
| | ) | |
| Creditor/Movant | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RON GLISSON | ) | |
| SARA GLISSON | ) | |
| | ) | |
| and | ) | |
| | ) | |
| M. ELAINA MASSEY, TRUSTEE | ) | |
| | ) | |
| Respondents | ) | |

## ORDER ON OBJECTION TO CONFIRMATION

This matter is before me on the Objection to Confirmation filed by creditor Atlantic National Bank, which asserts that the proposed chapter 13 plan does not apply all of the Debtors' projected disposable income to the payment of unsecured debt, as the Bankruptcy Code requires. The issue as framed by Atlantic National is whether the Debtors may in good faith exclude the Debtor wife's contributions to her 401(k) plan and payments on her 401(k) loan from the Debtors' monthly disposable income in a less-than-100% chapter 13 plan. I do not

AO 72A
(Rev. 8/82)

reach this question, because even when the amount at issue is included, the Debtors still have no disposable income with which to pay unsecured debt. Accordingly, the objection is overruled as moot.

### Background

Sara and Ron Glisson are debtors whose household income exceeds the median for the State of Georgia. Their case was filed on December 31, 2008, almost exactly one year after Sara Glisson either borrowed or withdrew approximately $27,000.00 from her employer's 401(k) plan. The Glissons say they used the money to pay down their credit cards and to cover shortfalls on other monthly bills. (Debtors' Br. 3.)

The Glissons characterize the transaction as a loan, while Atlantic National argues that the transaction should be considered a withdrawal. I have no evidence before me in support of either position. For the analysis that follows, however, I characterize the transaction as a loan.

It appears that the Glissons repaid some of the 401(k) loan over the months preceding their bankruptcy. The outstanding amount is $23,175.33, according to the Glissons' amended Schedule D, where the loan is incorrectly scheduled as a secured debt. Payments during the six months before the filing of their case should have been shown as a "qualified retirement deduction" on line 55 of the Glissons' Chapter 13 Statement of Current Monthly

Income and Calculation of Commitment Period and Disposable Income (Official Form 22C), informally referred to as the "means test form" for cases filed after the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). However, line 55 reads "$0.00" on both the initial and amended Official Form 22C. It appears that the loan repayment may have been mischaracterized as a "mandatory retirement contribution" and entered as a deduction from income on line 31, which reads "$547.99."

In addition to repaying her 401(k) loan, Sara Glisson contributes approximately $620.00 each month to her 401(k) plan.[1] According to the Glissons, this amount is less than the legally permitted maximum (Debtors' Br. 3), and Atlantic National did not dispute this fact. Sara Glisson's 401(k) contributions are documented on her pay advices for the six months preceding the filing of the case and in addition should have been listed as a "qualified retirement deduction" on line 55 of Official Form 22C. As stated above, however, "$0.00" was entered on line 55 instead.

Under the means test as calculated on the Glissons' amended Official Form 22C, "Monthly Disposable Income Under § 1325(b)(2)" as shown on line 59 is -($526.18).[2] The Glissons'

---

[1] Ron Glisson also contributes to a retirement plan, in the amount of $173.33 per month according to the Glissons' initial and amended Schedule I. Ron Glisson's contributions, however, are not at issue here.

[2] The term "disposable income" under BAPCPA means current monthly income, as defined in § 101(10A), less "amounts reasonably necessary to be expended" for the support of the debtor or the debtor's dependents. 11 U.S.C. §

amended chapter 13 plan proposes sixty months of payments to the Trustee at $888.00 per month, as well as the surrender of four rental properties, an additional undeveloped piece of land, and a boat. The plan also includes a direct monthly payment of $502.60 towards the 401(k) loan, which together with Sara Glisson's monthly 401(k) contribution would total approximately $1,122.00 paid each month toward Sara Glisson's retirement.

General unsecured creditors, however, would receive nothing under the plan. Atlantic National Bank, as the holder of an allowed unsecured deficiency claim of more than $175,000.00, notes the $1,122.00 directed each month to Sara Glisson's 401(k) plan and objects that the Glissons should not in good faith be able to "avoid paying Atlantic and other unsecured creditors by building a nest egg of savings for themselves." (Atlantic Br. 1.)

## Discussion

### I. 401(k) Contributions and Loan Repayments Do Not Constitute Disposable Income.

On objection of the trustee or the holder of an allowed unsecured claim, the court may not confirm a plan that does not provide that "all of the debtor's projected disposable income to be received in the applicable commitment period . . .

---

1325(b)(2)(A). For above-median-income debtors, § 1325(b)(3) provides that "amounts reasonably necessary to be expended" are based on the standard allowed expenses listed in § 707(b)(2)(A)-(B), known as the means test formula. These amounts, as well as "qualified retirement deductions," are entered into the Official Form 22C to arrive at the debtor's "Monthly Disposable Income Under § 1325(b)(2)."

be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B) (as amended by BAPCPA). As I explained at length in a previous decision, neither a debtor's contributions to a 401(k) plan nor repayments of amounts borrowed from a 401(k) plan constitute disposable income under § 1325(b). See In re Johnson, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006).

It is black letter law under BAPCPA that "any amount" contributed to certain employee benefit plans, including 401(k) plans, "shall not constitute disposable income as defined in section 1325(b)(2)." 11 U.S.C. § 541(b)(7)(A)-(B). This provision applies to contributions up to the applicable legal limit for the particular benefit plan. Johnson, 346 B.R. at 263. Moreover, "any amounts" required to repay a loan described in § 362(b)(19), including a 401(k) loan, "shall not constitute 'disposable income' under section 1325." 11 U.S.C. § 1322(f).

"The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989) (internal quotation marks omitted). Here, the statutory exclusion of 401(k) contributions and loan repayments from the calculation of disposable income is unconditional, and to apply the Code provisions literally would not produce a result demonstrably at odds with the intentions of Congress. The plain meaning of the applicable provisions

manifests a congressional intent to "place[] retirement contributions outside the purview of a [c]hapter 13 plan." Johnson, 346 B.R. at 263.

### II. Atlantic National's Arguments Fail.

#### A.

Atlantic National relies on two cases from this district to argue that a debtor's disposable income includes proposed contributions to a 401(k) plan and payments on a 401(k) loan. See In re Aliffi, 285 B.R. 550 (Bankr. S.D. Ga. 2002) (Davis, J.); Baxter v. Smith (In re Smith), 1997 WL 33475570 (Bankr. S.D. Ga. 1997) (Dalis, J.). Both of these cases, however were decided pre-BAPCPA; their holdings have been superseded by the statutory provisions explicitly removing retirement contributions and loan repayments from disposable income available for payments to unsecured creditors under § 1325(b)(1)(B). Consequently, even were I to reach the issue that Atlantic National presents, this argument would fail.

#### B.

Atlantic National also argues that the transaction the Glissons refer to as a loan was in fact a withdrawal. However, Atlantic National offers no evidence to prove this assertion, having submitted only general information concerning 401(k) loans and withdrawals under Sara Glisson's 401(k) plan rules. (See

Atlantic Br., Ex. A.) This documentation is insufficient to carry the burden required of a party objecting to confirmation.

Although the chapter 13 debtor bears the ultimate burden of proof on confirmation, "[a] party objecting to confirmation initially must go forward with some evidence that the criteria for confirmation are not met." Gen. Motors Acceptance Corp. v. Johnson (In re Johnson), 145 B.R. 108, 111 (Bankr. S.D. Ga. 1994), rev'd on other grounds, 165 B.R. 524 (S.D. Ga. 1994). Thus, the objecting party has the initial burden of going forward with evidence sufficient to place the issue in controversy. Here, Atlantic National failed to submit any evidence specific to the transaction in question. This failure is fatal to Atlantic National's argument concerning how the transaction should be characterized.

### III. Mootness

In the final analysis, however, the issue that Atlantic National presents is moot. Sara Glisson's 401(k) contributions and loan repayments, practically speaking, had no effect on the calculation of the Glissons' monthly disposable income.

Sara Glisson's monthly 401(k) contribution in fact was not excluded from the Glissons' monthly disposable income, based on the "$0.00" entry for "qualified retirement deductions" on line 55 of both the initial and amended Official Form 22(C). Assuming that the 401(k) loan repayment was the $547.99 deduction

from income listed on line 31 of both forms, if the Glissons had also excluded Sara Glisson's $620.00 contributions as documented on her pay advices, the Glissons' "Monthly Disposable Income under § 1325(b)(2)" on amended Official Form 22(C) would have amounted to -($1,146.18). Adding to that figure, for the purposes of illustration, the $1,122.00 that the Glissons propose for Sara Glisson's 401(k) contribution and loan repayment, the monthly disposable income available for payment to unsecured creditors under the plan would be -($24.18). There is no material difference between a monthly disposable income of -($24.18) and a monthly disposable income of -($526.18), the figure shown on the Glissons' amended Official Form 22C. Nothing is left.

I reiterate that monthly disposable income for above-median-income debtors under BAPCPA is determined by application of the means test formula in § 707(b)(2)(A)-(B) and calculated on Official Form 22(C). See Johnson, 346 B.R. at 262-64. Even if Sara Glisson's documented retirement contributions and her 401(k) loan repayments were included, the Glissons still would have no "Monthly Disposable Income Under § 1325(b)(2)" with which to pay unsecured creditors. Consequently, the objection by Atlantic National is moot.

### Conclusion

In the case of an above-median-income debtor, neither contributions to a 401(k) plan nor payments on a 401(k) loan are

included in disposable income available to pay unsecured creditors in a chapter 13 plan. Here, however, regardless of whether these amounts are included, the Debtors still would have no disposable income available to pay unsecured creditors under § 1325(b)(2).

**IT IS THEREFORE ORDERED** that the Objection to Confirmation filed by Atlantic National Bank is **OVERRULED**.

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia, this 18th day of June, 2009.